***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
At the hearing before the Deputy Commissioner, the parties agreed to stipulate to information regarding the Employment Security Commission, with that information being that plaintiff received $211.00 for the week of January 7, 2002 to January 14, 2002 and $267.00 per week in unemployment benefits between January 14, 2002 and October 23, 2002 and one check for $267.00 for week of November 7, 2002, making the total unemployment compensation paid to plaintiff $13,884.00.
At and subsequent to the hearing before the Deputy Commissioner, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (1), and a Packet of Records from Defendant-Employer, which was admitted into the record, and marked as Stipulated Exhibit (2).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On all relevant dates, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
2. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On all relevant dates, Liberty Mutual Insurance Company was the workers' compensation carrier on the risk.
4. On December 18, 2000, the date of the incident giving rise to this claim, plaintiff's average weekly wage was $436.00, which yields a compensation rate of $290.81.
5. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-seven (47) years of age, with his date of birth being February 16, 1957, and had obtained his GED. Plaintiff's work history includes working as a machine operator making appliance parts, and as a grounds maintenance person.
6. On December 18, 2000, plaintiff was employed by defendant-employer as a machine operator. Defendant-employer's business consists primarily of the manufacturing of plastic containers. On that date, plaintiff testified that on he was on top of a stack of skids approximately ten to fifteen (10 — 15) feet in height, and was attempting to remove the top skid when the stack began to rock. As a result, plaintiff testified that he lost his balance and fell landing on his right leg. Plaintiff further testified that after his fall, he laid on the plant floor for a period yelling in regards to his injury. Plaintiff did not report any incident or injury to defendant-employer on December 18, 2000.
7. Subsequent to December 18, 2000, plaintiff continued his regular employment with defendant-employer until he requested leave under the Family and Medical Leave Act on June 4, 2001 to take care of his grandchild.
8. Following this period of personal leave, plaintiff returned to work for defendant-employer on July 2, 2001 in his regular position, and continued working in that capacity until July 23, 2001, when he again requested leave under the Family and Medical Leave Act. At no time throughout this period did plaintiff complain of any work-related right knee, right ankle or right leg problems to his supervisor or other personnel at defendant-employer. Additionally, the credible evidence of record is that subsequent to December 2000, plaintiff had daily contact with representatives of defendant-employer, particular his supervisor, and was involved with and received numerous appraisal reviews. None of the documents related to plaintiff's reviews or any other employment related matter reflects any comments or complaints regards his ability or inability to perform his normal duties. Moreover, there is no reference to any work-place incident or injury in any of plaintiff's employment records prior to October 2001.
9. At the hearing, plaintiff testified that he first sought medical treatment for his alleged December 18, 2000 knee injury on June 28, 2001 when he was examined by Dr. Arthur Raines. However, in direct contradiction to plaintiff's testimony, the medical records from the June 28, 2001 appointment with Dr. Raines indicate that plaintiff was being examined on that date for scapular mid back pain. Furthermore, the medical records from June 28, 2001 make no reference to any lower extremity complaints and in fact reflects that Dr. Raines' examination found that plaintiff was "grossly intact in both upper and lower extremities." Dr. Raines' assessment at that time was that employee had a latissimus muscular strain bilaterally.
10. Plaintiff's July 23, 2001 Family and Medical Leave Act request was based upon right knee problems. However, there is no reference in the relevant documents accompanying this request to any work-place incident or injury. In fact, documents accompanying this leave request indicate that plaintiff had been examined by Dr. Raines for a new complaint of right knee pain. Dr. Raines' impression at that time was that employee had an internal derangement of his right knee and recommended that plaintiff employee undergo an MRI. Plaintiff did not attend the appointment for his MRI in spite of the fact that his medical expenses at that time were being paid by his private insurance carrier.
11. Based upon the credible evidence of record, plaintiff first notified defendant-employer of his claim of a work-place injury in October 2001 when he contacted Ms. Phyllis Cecil, who completed a First Report of Injury form based upon the information given to her by plaintiff.
12. All of defendants' witnesses testified that at no time had plaintiff ever mentioned any type of incident occurring at work on December 18, 2000, and that plaintiff was physically able to perform his regular job through July 23, 2001, when he took leave for a right knee condition. These witnesses also testified that at no time did plaintiff report that his knee injury was related to any work-place incident. Additionally, these witnesses testified that when plaintiff reported a work-place injury in October 2001, that he initially stated he had tripped on a pallet and then indicated he had fallen on a pallet.
13. The testimony of defendants' witnesses, Mr. Addison, Ms. Peters, and Ms. Cecil, is accepted as credible by the undersigned, as opposed to plaintiff's testimony, which is given no weight on the relevant issues.
14. Plaintiff did not sustain an injury by accident arising out of and in the course and scope of his employment with defendant-employer on December 18, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment on December 18, 2000. N.C. Gen. Stat. §97-2(6)
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. Under the law plaintiff's claim must be, and is HEREBY DENIED.
2. Each side shall pay its own costs.
This the 29th day of August, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER